IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRAY MURRAY, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 00-4903 |
| | : | |
| v. | : | |
| | : | |
| PHILLIP JOHNSON; THE DISTRICT | : | |
| ATTORNEY OF THE COUNTY OF | : | |
| PHILADELPHIA, LYNN ABRAHAM; | : | |
| and THE ATTORNEY GENERAL | : | |
| OF THE STATE OF PENNSYLVANIA, | : | |
| MICHAEL FISHER, | : | |
| | : | |
| Respondents. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                                    March 27, 2023

The *pro se* petitioner is currently serving a life sentence after a jury convicted him of first-degree murder and a firearms offense in 1982. After his sentencing, the petitioner did not file a direct appeal, and his first petition for collateral relief in the state courts was dismissed as untimely in 1988. Then, in 1997, the petitioner filed his second petition for collateral relief which was also dismissed as untimely, and this dismissal was upheld on appeal. Thereafter, he filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court, which was denied in August 2001 because it was filed outside the one-year limitations period in 28 U.S.C. § 2244(d)(1)(A) and was not entitled to statutory or equitable tolling.

Currently before the court is the petitioner's motion under Federal Rule of Civil Procedure 60(b)(6) in which he seeks to have the court vacate the August 2001 denial of his original habeas petition. In his motion, he contends that he has demonstrated extraordinary circumstances entitling him to relief based mainly on two Pennsylvania Supreme Court decisions, *Commonwealth v.*

*Peterson*, 192 A.3d 1123 (Pa. 2018) and *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), both of which addressed issues pertaining to ineffective assistance of counsel claims. He also appears to argue that he is entitled to relief based on his prior counsel's cumulative acts of ineffective assistance of counsel and the Commonwealth of Pennsylvania having purportedly misled him regarding his ability to obtain review of ineffective assistance of counsel claims in 1997.

As discussed below, the petitioner is not entitled to relief under Rule 60(b)(6) because the two Pennsylvania Supreme Court decisions he references are immaterial to the August 2001 denial of his habeas petition on timeliness grounds. In addition, with respect to *Bradley*, even if it was material, the petitioner has failed to exhaust this claim by first raising it in the state courts. Concerning the petitioner's remaining claims, the court must deny them as untimely because the petitioner has known the factual basis of these claims for years. For these reasons, the court will deny the Rule 60(b)(6) motion.

## I.     BACKGROUND AND PROCEDURAL HISTORY[1]

Over 40 years ago, the petitioner, Bray Murray ("Murray"), was tried by a jury sitting in the Court of Common Pleas of Philadelphia County on charges of criminal homicide, possessing an instrument of crime, and robbery. *See Commonwealth v. Murray*, 488 A.2d 45, 45 (Pa. Super. 1985) ("*Murray I*"); Docket, *Commonwealth v. Murray*, No. CP-51-CR-402931-1982 (Phila. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0402931-1982&dnh=nTLsmNIl275rZCZjNWU%2Ftg%3D%3D ("CCP Docket") (last visited March 24, 2023). During the trial, the

> Commonwealth's evidence established that on November 7, 1981, at
> approximately 8:30 p.m., [Murray] and the decedent, Eric Taylor, were customers
> of the P and D Bristol Bar in Philadelphia. [Murray] exited the bar and waited

---

[1] The court has compiled the background of this case, which started in the early 1980s, through references to the documents filed in this case, the publicly available criminal court docket, and the various reported and unreported decisions in the petitioner's state and federal cases.

outside where he was overheard saying to himself: "Wait till the motherfucker come out the bar." When Eric Taylor emerged from the bar, [Murray] grabbed him from behind and said, "Give me your money, pussy." Immediately thereafter, [Murray] repeatedly stabbed Taylor with a ten-inch dagger. [Murray] then ran away, leaving Taylor bleeding heavily and leaning against a parked automobile.[2] Mr. Taylor died six days later as a result of multiple stab wounds.

*Murray I* at 45 (footnote in original). In his defense, Murray presented the testimony of his

companion, Kevin Mathis a/k/a Gilmore. According to him, Taylor and [Murray] had a verbal argument inside the bar and when they went outside Taylor was the first to brandish a knife. He further testified that [Murray] responded by seizing Taylor with one hand and repeatedly stabbing him with the other.

*Id.* at 46.

A jury ultimately found Murray guilty of first-degree murder[3] and possessing an instrument of crime.[4] *See id.* The jury acquitted Murray of robbery. *See id.*

Prior to sentencing, Murray filed a motion in which he requested a new trial because, *inter alia*, his trial counsel was ineffective. *See id.* Based on this allegation, the trial court appointed new counsel to represent Murray, and his new counsel filed an amended motion for a new trial in which he again argued that he was entitled to a new trial due to the ineffectiveness of his trial counsel, in part because trial counsel failed to contact and call certain witnesses.[5] *See id.* The trial court scheduled an evidentiary hearing on the motion in which Murray, Murray's mother, and Murray's trial counsel testified.[6] *See id.* The trial court later granted Murray's motion for a new

---

[2] After the attack ceased and [Murray] was some eighty feet away, Mr. Taylor was observed taking out and opening his own knife, but he then closed it and put it away.

[3] 18 Pa. C.S. § 2502(a).

[4] 18 Pa. C.S. § 907.

[5] In the amended motion for a new trial, Murray alleged that he had requested trial counsel to "contact and call four witnesses to testify in his favor[:] . . . Carolyn and Christine Jones; Andre Jackson; and one Jill (whose last name is unknown); and his counsel failed to contact said witnesses." *Murray I* at 46. He also alleged that trial counsel "failed to Petition the Court for the appointment of an investigator when there was a compelling need for same." *Id.*

[6] During the hearing,

testimony on the ineffectiveness issue was taken from [Murray], his mother and trial counsel. Although [Murray] admitted that on the date of his arrest he named only Mathis as an eyewitness to the detective who interrogated him, he maintained that he had advised counsel well before trial of the previously noted additional alleged witnesses and that counsel had promised to conduct an

trial due to trial counsel's ineffectiveness, but before Murray could be retried, the Commonwealth filed an appeal from the order granting Murray a new trial to the Superior Court of Pennsylvania. *See id.* at 45, 46.

The Superior Court reversed the trial court's order granting a new trial and remanded the case for sentencing. *See id.* at 45, 48. The Superior Court explained that the trial court granted Murray a new trial "because trial counsel knew that the fight took place before a group of people, he was ineffective in failing to employ a professional investigator to locate any witnesses, as opposed to depending upon the efforts of appellee and his family." *Id.* at 46 (noting that trial court relied on *Commonwealth v. White*, 450 A.2d 63 (Pa. Super. 1983) in support of decision to grant new trial). The Superior Court determined that this was an insufficient reason upon which to grant Murray a new trial because the trial court never addressed whether counsel's alleged ineffectiveness prejudiced Murray, and the record showed that Murray was not prejudiced. *See id.* at 48. Instead, the record showed that none of the witnesses Murray wanted his trial counsel to contact and call appeared for the evidentiary hearing, and Murray "never established what they would testify to had they appeared or how their absence at trial prejudiced him." *Id.* at 46. As such,

---

investigation. [Murray] further testified that the three female alleged witnesses were contacted by his mother, but they refused to testify.

[Murray's] mother, however, testified she did not ask the three women to testify because her son told her that he did not want to involve them. She further stated that although she spoke to Andre Jackson, he had no address and he was afraid to testify.

Trial counsel denied that [Murray] ever informed him of either Jones' woman. Counsel stated that appellee could not furnish an address for Andre Jackson, and that appellee's family had advised him that Jackson would not cooperate. He testified that [Murray] had mentioned that there were other witnesses, but was unable to give him any names or addresses. Counsel stated that although he constantly emphasized to [Murray] and his mother the importance of locating potential witnesses, he did not seek the aid of a professional investigator. He explained that he did not retain an investigator because all the potential witnesses were friends and people in the neighborhood and it had been his experience that if these people would not cooperate with [Murray] and his family, a professional investigator would be unavailing.

*Murray I* at 46.

4

Murray failed "to adduce any evidence whatsoever that the uncalled witnesses would have aided his defense." *Id.* at 47. Accordingly, the Superior Court determined that the trial court erred in finding Murray's trial counsel ineffective based on the failure to call certain witnesses because "not only have the alleged witnesses never been produced, [but] there is [also] no indication whatsoever that their testimony-assuming they do exist and were willing to testify-would be helpful to [Murray]." *Id.* at 48.

The Superior Court remanded the case to the Philadelphia Court of Common Pleas, after which the trial judge held a sentencing hearing on April 23, 1985, and sentenced Murray to life imprisonment for first-degree murder and two-and-a-half years' imprisonment for possessing an instrument of crime. *See Commonwealth v. Murray*, No. 1943 EDA 2012, 2013 WL 11280957, at *1 (Pa. Super. Feb. 19, 2013) ("*Murray II*"); Docket; May 30, 2001 R. & R. at 2, Doc. No. 8. Murray did not file a direct appeal from his sentence. May 30, 2001 R. & R. at 2.

Murray, acting through newly appointed counsel, filed his first petition for post-conviction collateral relief under Pennsylvania's Post Conviction Hearing Act ("PCHA") on December 31, 1986. *See id.*; Pet'r's Br. in Supp. of 2d Mot. for Recons. of J. Pursuant to Fed. R. Civ. P. 60(b)(6), Entered 08/24/2001, Dismissing Habeas Corpus Petition as Untimely ("Pet'r's Br.") at ECF pp. 6–7, Doc. No. 35. The Court of Common Pleas dismissed that PCHA petition as untimely on June 1, 1988. *See* May 30, 2001 R. & R. at 2; Pet'r's Br., Ex. K, Mem. and Order at 1, *Commonwealth v. Murray*, No. CP-51-CR-402931-1982 (Phila. Ct. Com. Pl.), Doc. No. 35-1 (indicating that court denied PCHA petition in June 1988 because it was untimely filed).[7] Murray did not file an appeal from this dismissal. *See id.*

---

[7] Exhibit K starts at page 151 of Doc. No. 35-1.

Murray filed a second collateral relief petition under Pennsylvania's renamed Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA") on January 10, 1997.[8] *See* May 30, 2001 R. & R. at 2. The PCRA court dismissed the petition as untimely on June 11, 1997. *See id.* (citing 42 Pa. C.S. § 9545(b)).[9] On this occasion, Murray did appeal from the dismissal of his second PCRA petition to the Pennsylvania Superior Court, which affirmed the dismissal of the second PCRA petition on May 24, 1999. *See id.* (citing *Commonwealth v. Murray*, No. 2919 Phila. 1997 (Pa. Super. May 24, 1999)). Murray then filed a petition for allowance of appeal with the

---

[8] "The PCHA was modified in part, repealed in part, and renamed the [PCRA] . . . effective April 13, 1988." *Terry v. Gillis*, 93 F. Supp. 2d 603, 606 n.2 (E.D. Pa. 2000).

[9] The time for filing a PCRA petition is as follows:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

. . .

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4) For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 Pa. C.S. § 9545(b).

Pennsylvania Supreme Court on June 16, 1999, and the Court denied that petition later in 1999.[10] *See id.* at 2–3.

After twice unsuccessfully seeking collateral relief in the Pennsylvania state courts, Murray filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court on September 21, 2000. *See* Doc. No. 1. In this habeas petition, Murray asserted (1) claims of ineffective assistance of counsel against his trial counsel, post-verdict counsel, and "substitute counsel," (2) a claim that his right to appeal was denied, (3) a claim that there was insufficient evidence to support the verdict, (4) a claim that the trial court imposed an illegal sentence, and (5) claims that his equal protection and due process rights were violated. *See* Pet. for Writ of Habeas Corpus by a Person in State Custody at 9–10, 14, Doc. No. 1. The respondents filed a response in opposition to the habeas petition on May 7, 2001. *See* Doc. No. 7. In their response, the respondents argued that the court should dismiss Murray's habeas petition because it was time-barred. *See* Resp. to Pet. for Writ of Habeas Corpus at 3–5, Doc. No. 7.

The Honorable Peter B. Scuderi, now deceased, filed a report on May 30, 2001, where he recommended that the court dismiss the habeas petition as untimely.[11] *See* May 30, 2001 R. & R. at 3–7. In response to the report and recommendation, Murray filed multiple documents on June 13, 2001: (1) an "Amended Petition for Writ of Habeas Corpus in Support of Objection Motion," (2) objections to the report and recommendation, (3) a motion for appointment of counsel, (4) an application for a certificate of appealability, and (5) a notice of appeal. *See* Doc. Nos. 9–13.[12]

---

[10] Murray alleges that the Pennsylvania Supreme Court denied his petition for allowance of appeal on September 28, 1999. *See* Doc. No. 9 at ECF p. 5.

[11] The Honorable Jan. E. DuBois had referred the petition to Magistrate Judge Scuderi on January 31, 2001. *See* Doc. No. 3.

[12] Apparently, the notice of appeal was transmitted to the Third Circuit Court of Appeals, which docketed it at No. 01-2546. *See* Doc. No. 14 & Unnumbered Docket Entries Between Doc. Nos. 14 and 15. On August 23, 2002, the Third Circuit dismissed the appeal for lack of appellate jurisdiction. *See* Doc. No. 26; *see also* Docket, *Murray v. Johnson*, No. 01-2546 (3d Cir.).

Murray also filed an application to proceed *in forma pauperis* on appeal on June 22, 2001. *See* Doc. No. 15.

In light of these new filings, Judge DuBois referred the case again to Judge Scuderi for the preparation of a supplemental report and recommendation relating to Murray's motion for appointment of counsel, objections to his original report and recommendation, application for a certificate of appealability, and his application for leave to proceed *in forma pauperis*. *See* Doc. No. 16. Judge Scuderi filed a supplemental report on July 25, 2001, in which he recommended that Judge DuBois dismiss each of Murray's new filings. *See* July 25, 2001 Suppl. R. & R. at 1–8, Doc. No. 17. Murray filed objections to the supplemental report and recommendations on August 10, 2001. *See* Doc. No. 18.

On August 23, 2001, Judge DuBois entered an order which (1) approved and adopted Judge Scuderi's original and supplemental report and recommendations, (2) overruled Murray's objections to the original and supplemental report and recommendations, (3) dismissed Murray's original habeas petition and amended habeas petition, (4) denied Murray's motion for appointment of counsel, (5) denied Murray's application for a certificate of appealability, and (6) denied Murray's application for leave to proceed *in forma pauperis* on appeal. *See* Aug. 23, 2001 Order at 1–2, Doc. No. 19. Approximately a month later, Murray filed an application for a certificate of appealability, a motion for leave to prepare and transmit the record, and another notice of appeal. *See* Doc. Nos. 20–22. Judge DuBois entered an order denying Murray's application for a certificate of appealability and motion for leave to prepare and transmit the record. *See* Doc. No. 25. As for his notice of appeal, it appears that the Third Circuit Court of Appeals docketed it at No. 01-3652. *See* Oct. 1, 2001 Unnumbered Docket Entry Between Doc. Nos. 24 and 25.

The Third Circuit entered an order denying Murray's request for a certificate of appealability on August 23, 2002. *See* Docket, *Murray v. Johnson*, No. 01-3652 (3d Cir.). Murray then filed a petition for rehearing before the original panel on October 24, 2002, which the Third Circuit denied on December 5, 2002. *See id.* Murray next filed a petition for a writ of certiorari, which the United States Supreme Court denied on June 12, 2003. *See id.*

Approximately nine years later, on March 12, 2012, Murray filed his third PCRA petition. *See* Docket; *Murray II* at *1.[13] The PCRA court issued a notice of intent to dismiss the PCRA petition on May 31, 2012.[14] *See* Docket; *Murray II* at *1. Murray responded to the notice of intent to dismiss on June 13, 2012, and the PCRA court entered an order and memorandum opinion on June 25, 2012, denying the third PCRA petition as untimely. *See* Docket; *Murray II* at *1. Murray appealed from this decision to the Superior Court on July 9, 2012, and the Superior Court affirmed the dismissal via a decision entered on February 19, 2013.[15] *See* Docket; *Murray II* at *2.

---

[13] Unfortunately, there is an extensive gap on the publicly available docket as it does not show any activity in Murray's criminal case from his sentencing on April 23, 1985, until the filing of a PCRA petition on March 12, 2012. *See* Docket. Thus, per the docket, it appears to be Murray's first PCRA petition. There are apparently numerous missing docket entries as this March 2012 PCRA petition appears to be Murray's third collateral petition. *See Murray II* at *1.

[14] Rule 907 of the Pennsylvania Rules of Criminal Procedure allows a PCRA court to dispose of a PCRA petition without a hearing:

> Except as provided in Rule 909 for death penalty cases,
>
> (1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa. R. Crim. P. 907(1).

[15] Regarding Murray's claims in his third PCRA petition, the Superior Court described that even though Murray attempted to invoke one of the exceptions to the one-year limitations period for PCRA petitions,

> he failed to make clear how the exceptions apply to his claim. For that matter, [Murray's] petition failed to make clear what his claim is. As best we can discern, [Murray] claimed that his trial counsel was ineffective for abandoning him and not filing a direct appeal on his behalf. Even if we assume *arguendo* that [Murray] pled and offered proof of the application of these exceptions, he knew or

Murray then returned to this court by filing a "Motion for Rule 60(b)(6); Rule 60(d)(1); and Rule 60(d)(1)(3) Relief from the Judgment or Order Dismissing Writ of Habeas Corpus Petition; and Incorporated Memorandum of Law in Support of Motion," which the clerk of court docketed on October 15, 2013. Doc. No. 27. A little over a month later, Murray filed a "Motion for Leave to Amend Original § 2254 Writ of Habeas Corpus Petition: Pursuant to Fed. R. Civ. P. Rule 15(c)(1)(b): Relation-Back." Doc. No. 28. On May 9, 2015, Judge DuBois entered an order denying both motions. *See* Doc. No. 29.

Regarding Murray's motion for leave to amend his original habeas petition under Rule 15 of the Federal Rules of Civil Procedure, Judge DuBois pointed out that "[t]here is no authority which permits *habeas corpus* petitions to be amended after the case has been adjudicated, judgment entered, and the matter closed." May 9, 2015 Order at 2, Doc. No. 29. As for Murray's Rule 60 motions, Judge DuBois explained that Murray

> argue[d] that he is entitled to Rule 60 relief because his trial counsel was ineffective and because counsel allegedly abandoned him during the post conviction proceedings. [Murray] argue[d] that the Supreme Court's rulings in *Martinez v. Ryan*, 566 U.S. ____, 132 S.Ct. 1309 (2012), *Maples v. Thomas*, 565 U.S. ____, 132 S.Ct. 912 (2012), and *Holland v. Florida*, 560 U.S. 631 (2010) require a determination that his procedural bar should be excused and that the deadline for filing his Petition should be tolled. He also asserts that extraordinary circumstances exist which warrant granting Rule 60 relief[.]

*Id.* Judge DuBois rejected Murray's *Martinez* argument because it did "not provide a basis for disturbing this Court's dismissal order" insofar as *Martinez* was inapplicable to a determination of whether a habeas petition was timely filed. *See id.* at 3. Judge DuBois also determined that *Maples* and *Holland* would not provide Murray Rule 60(b) relief because they were inapplicable and,

---

should have known that counsel failed to file a direct appeal on his behalf in May of 1985. Consequently, [Murray] clearly did not file his petition within sixty days of the date his claim could have been presented, in violation of 42 Pa.C.S.A. § 9545(b)(2).

*Murray II* at *1.

further, Murray was not entitled to equitable tolling because he did not diligently pursue his rights or establish that extraordinary circumstances prevented him from timely filing his habeas petition. *See id.* at 3–4.

Murray appealed from Judge DuBois's order to the Third Circuit. *See* Doc. No. 30. On January 15, 2016, the Third Circuit denied Murray's request for a certificate of appealability. *See* Doc. No. 34. Murray then filed a petition for rehearing *en banc* and before the original panel, which the Third Circuit denied on February 17, 2016. *See* Docket, *Murray v. Superintendent Benner SCI*, No. 15-1876 (3d Cir.). Although Murray filed a petition for a writ of certiorari with the United States Supreme Court, the Court denied the petition on October 3, 2016. *See id.*

Murray then returned to the Pennsylvania state courts by filing his fourth PCRA petition on November 19, 2018. *See Commonwealth v. Murray*, No. 631 EDA 2021, 2021 WL 4352366, at *1 (Pa. Super. Sept. 24, 2021) ("*Murray III*"). In this fourth petition, Murray "rais[ed] multiple claims of ineffective assistance of trial counsel[, and he] . . . alleged that the PCRA court had jurisdiction to entertain the petition pursuant to 42 Pa. C.S. § 9545(b)(1)(ii) and (iii) and [the Pennsylvania] Supreme Court's decision in *Commonwealth v. Peterson*, 192 A.3d 1123 (Pa. 2018)." *Id.*

The PCRA court notified Murray of its intent to dismiss his fourth PCRA petition for being untimely, and eventually entered an order dismissing it on March 1, 2021. *See id.* In dismissing the petition, the PCRA court "concluded that *Peterson* was unavailing to establish jurisdiction, as judicial decisions are not 'facts' for purposes of § 9545(b)(1)(ii), and *Peterson* did not recognize a new constitutional right that the Court held was retroactively applicable" for purposes of section 9545(b)(1)(iii). *Id.*

Murray timely appealed from the PCRA court's dismissal to the Superior Court. *See id.* On appeal, Murray argued that contrary to the PCRA court's decision, his fourth PCRA petition qualified under the timeliness exceptions in sections 9545(b)(1)(ii) and (iii) of the PCRA. *See id.* He also contended that his second PCRA petition filed in January 1997 should qualify as his first PCRA petition because, *inter alia*, he had not authorized his counsel to file the PCHA petition on his behalf in 1986. *See id.* Murray further argued that "his inability to secure the ruling that Mr. Peterson was able to obtain, due to the timing of his counsel's error, results in an 'absolute miscarriage of justice,' and that 'fundamental fairness behoove[s] that PCRA relief be granted on the basis of *Peterson*.'" *Id.* at *5.

The Superior Court first addressed Murray's arguments about his fourth PCRA petition qualifying under two of the exceptions to the one-year limitations period. The court indicated that Murray

> maintains that the *Peterson* holding serves to render the instant PCRA petition timely pursuant to § 9545(b)(1)(ii). He contends that, like Mr. Peterson, he has been completely denied collateral review. Specifically, his initial PCHA petition was filed by counsel without his consent and was dismissed as untimely in 1988, and his prior pro se PCRA petitions in which he sought reinstatement of his direct appeal rights were likewise dismissed as untimely. Hence, because he filed this decision within one year of the Peterson decision, he is entitled to substantive review of his claims of ineffectiveness of counsel.

*Id.* at *4 (citing Murray's appellate brief). The court rejected these arguments.

In rejecting his arguments, the court first pointed out that Murray "misapprehend[ed] the import of *Peterson*." *Id.* The court explained that, unlike the defendant in *Peterson*, Murray had "known . . . for decades" the fact that his counsel's alleged "ineffectiveness deprived him of collateral review." *Id.* As such, Murray was attempting to use *Peterson* as a "fact" to satisfy the PCRA's exception to the one-year limitations period for when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of

due diligence." *Id.* (referencing 42 Pa. C.S. § 9545(b)(1)(ii)). This attempt was improper because judicial decisions could not qualify as "facts" under this exception. *See id.* (citing *Commonwealth v. Reid*, 235 A.3d 1124, 1148 (Pa. 2020)).

Regarding Murray's attempt to invoke the newly recognized constitutional right exception under section 9545(b)(1)(iii) of the PCRA, the court determined that Murray could not satisfy the requirements of this section because even if *Peterson* recognized a new constitutional right, the Pennsylvania Supreme Court had not held *Peterson* to apply retroactively. *See id.* at *4. The court explained that "[s]ince [Murray] points to no decision from our High Court indicating both that *Peterson* recognized a new constitutional right and that it applies retroactively, he cannot use that decision to meet the § 9545(b)(1)(iii) exception." *Id.* at *5.

After concluding that Murray's fourth PCRA petition failed to meet either timeliness exception, the court addressed Murray's miscarriage of justice claim. *Id.* The court explained that due to Murray's inability to establish that he timely filed his fourth PCRA petition, the court could not consider his miscarriage of justice claim. *See id.* (citing *Commonwealth v. Burton*, 936 A.2d 521, 527 (Pa. Super. 2007)). The court also determined that Murray's final argument about whether his January 1997 PCRA petition should be considered as his first collateral relief petition was irrelevant to whether "the PCRA court erred in finding that [his fourth] PCRA petition was subject to any of the statutory timeliness exceptions." *Id.*  Accordingly, the court affirmed the PCRA court's order dismissing Murray's fourth PCRA petition. *See id.* at *6.

Following the Superior Court's decision, Murray filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which the Court denied on February 14, 2022. *See Commonwealth v. Murray,* No. 425 EAL 2021, 272 A.3d 1287 (Table) (Pa. 2022). It also appears that Murray filed a motion for reconsideration, which the Court denied on April 6, 2022. *See id.*

Following his fourth unsuccessful attempt at Pennsylvania collateral relief, Murray has come back to federal court by filing the instant "Second Motion for Reconsideration of the Judgment Pursuant to Fed. R. Civ. P. 60(b)(6), Entered 09/28/2001, Dismissing Habeas Corpus Petition as Untimely" on April 21, 2022.[16] Several days later, this matter was reassigned from Judge DuBois's calendar to the undersigned's calendar. *See* Doc. No. 36. Murray's Rule 60(b)(6) motion is ripe for disposition.

## II.     DISCUSSION

Murray brings the instant motion under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) provides as follows:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> **(4)** the judgment is void;
>
> **(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> **(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(c), in turn, provides the timing within which a Rule 60(b) motion must be made: either within a year of the entry of the order or judgment from which the motion

---

[16] Due to the way Murray compiled and mailed this document, the clerk's office did not discover that this motion was among the 240 pages of documents Murray had submitted for filing until November 2022. On November 29, 2022, the clerk's office separated the motion from Murray's exhibits and docketed it as a separate motion. At this point, the undersigned recognized that he had a pending Rule 60(b)(6) motion.

seeks relief if the motion is made pursuant to Rule 60(b)(1), (2), or (3), or "within a reasonable time" if the motion is made under any other provision. Fed. R. Civ. P. 60(c).

Because this is a federal habeas action, the court must evaluate whether Murray's Rule 60(b)(6) motion is properly characterized as an unauthorized second or successive habeas petition. AEDPA mandates that before a state prisoner may file a second or successive habeas petition in which he challenges a judgment of sentence that he previously challenged in a federal habeas action, he must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); *see, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 330–31 (2010) ("If an application [for a writ of habeas corpus] is 'second or successive,' the petitioner must obtain leave from the court of appeals before filing it with the district court."); *United States v. Winkelman*, 746 F.3d 134, 135 (3d Cir. 2014) (interpreting motion to recall mandate and reinstate direct appeals as successive habeas motion); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) (addressing requests for authorization to file successive habeas petition under section 2254 to raise claims under *Miller v. Alabama*, 567 U.S. 460 (2012)). Importantly, AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals have divested district courts of jurisdiction over habeas applications that are second or successive. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147, 157 (2007) ("The long and short of it is that [the petitioner] neither sought nor received authorization from the Court of Appeals before filing his . . . 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it."). A habeas petitioner cannot avoid AEDPA's second or successive gatekeeping mechanism by raising

habeas claims in a filing that he designates as a Rule 60(b) motion. *See Sutton v. Commonwealth*, Civ. A. No. 17-109 Erie, 2018 WL 4599825, at *2 (W.D. Pa. Sept. 25, 2018) (explaining that "the Petitioner could not avoid AEDPA's second or successive gatekeeping mechanism[,] by simply designating a filing as a Rule 60(b) motion" (internal quotation marks and citations omitted)); Brian R. Means, FEDERAL HABEAS MANUAL § 11:42, Westlaw (database updated May 2019) (explaining that "a [habeas] petitioner is not permitted to circumvent AEDPA's second or successive petition requirements simply by labeling the petition or motion as something other than what it is").

The starting point for analyzing whether the instant motion is a second or successive habeas petition is *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In *Gonzalez*, the United States Supreme Court addressed the circumstances in which the use of Rule 60(b) is "inconsistent with" AEDPA's second or successive petition requirements and, consequently, unavailable to a state prisoner seeking habeas relief.[17] *See* 545 U.S. at 526 (addressing "whether, in a [section 2254] habeas case, such motions are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions under [AEDPA] . . . ."). The Court explained that courts must construe a Rule 60(b) motion as a "second or successive habeas corpus application" when it advances "one or more 'claims.'" *Id.* at 531–32 (quoting 28 U.S.C. § 2244(b)(1), (2)). The Court observed that "[i]n most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify." *Id.* at 532. In addition, the Court instructed that a petitioner is advancing a habeas claim in a Rule 60(b) motion if he "attacks the federal court's previous resolution of a claim on the merits, since alleging

---

[17] Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules.'" *Gonzalez*, 545 U.S. at 529 (footnote omitted; alteration in original) (quoting now-Rule 12 of the Rules Governing Section 2254 Cases).

that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* (footnote omitted). Similarly, a motion seeking to present newly discovered evidence in support of a claim that the court previously denied represents a habeas claim. *Id.* In contrast, a motion is a "true" Rule 60(b) motion if it challenges a procedural ruling made by the district court that precluded a merits determination of the habeas petition, or "challenges a defect in the integrity of the federal habeas proceedings," such as an assertion that the opposing party committed fraud upon the court. *Id.* at 532, n.4.

Here, Murray includes several arguments in his Rule 60(b)(6) motion. First, he contends that the Pennsylvania Supreme Court's decisions in *Peterson* and *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021) "are substantial changes in decisional law that, either standing alone or in combination with other equitable factors, constitute as an 'extraordinary circumstance' sufficient to invoke relief from [a] final judgment under Rule 60(b)(6)." Pet'r's Br. in Supp. of 2d Mot. for Recons. of the J. Pursuant to Fed. R. Civ. P. 60(b)(6) at ECF p. 10, Doc. No. 35. Second, he argues that the cumulative acts of ineffective assistance of counsel, with emphasis on his one attorney's failure to file a requested notice of appeal in 1985 only to then file an untimely PCHA petition in December 1986, constitute extraordinary circumstances warranting relief. *See id.* at ECF pp. 13–15. Third, Murray asserts that he was actively misled by the Commonwealth of Pennsylvania that "the PCRA had encompassed the common law remedies of [*Commonwealth v. Hubbard*, 372 A.2d 687 (Pa. 1977) and *Commonwealth v. Lawson*, 549 A.2d 107 (Pa. 1988)] that existed before the passage of 1995 time-bar amendments to the PCRA, to provide merit review of ineffectiveness claims" constitutes an extraordinary circumstance. *See id.* at ECF pp. 15–18. It appears from these arguments that Murray is attempting to challenge Judge DuBois's conclusion that his habeas

petition was untimely filed; thus, it appears that this is a true Rule 60(b) motion. Nevertheless, none of Murray's arguments warrants Rule 60(b)(6) relief.

The court first addresses Murray's arguments about the alleged intervening changes in the law brought about by *Peterson* and *Bradley*. When faced with Rule 60(b) motions in which the movant is seeking relief based on an alleged intervening change in the law, the district court

> must address three issues: First, [the court] ask[s] whether the asserted change is material to the basis on which the district court initially denied habeas relief. *See Norris v. Brooks*, 794 F.3d 401, 404–05 (3d Cir. 2015). If it is, [the court] then evaluate[s] whether the district court analyzed the petitioner's Rule 60(b) motion in accordance with a multifactor analysis we outlined in *Cox*, which includes, among other things, a consideration of the effect of the change in decisional law and an assessment of "the merits of [the] petitioner's underlying . . . claim." 757 F.3d at 124. Finally, we determine the proper disposition on appeal: If the District Court undertook the requisite multifactor analysis, we review the merits of its ruling for abuse of discretion, *id.* at 118, but if it did not engage in that analysis or "we cannot determine from what it wrote whether the Court considered [the relevant] factors," *id.* at 120, then the District Court per se abused its discretion and we ordinarily remand, because "[t]he grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court," *id.* at 124.

*Bracey v Superintendent Rockview SCI*, 986 F.3d 274, 284 (3d Cir. 2021).

In this case, Murray's Rule 60(b)(6) motion fails at the first level of this procedure because the asserted changes in decisional law—*Peterson* and *Bradley*—are immaterial to the basis upon which Judge DuBois denied his initial habeas petition. In denying Murray's original and amended habeas petitions, Judge DuBois approved and adopted Judge Scuderi's original and supplemental report and recommendations, and he overruled Murray's objections to those reports and recommendations. *See* Aug. 24, 2001 Order at 1–2. In Judge Scuderi's original report and recommendation, he determined that Murray's petition was untimely under section 2244(d)(1)(A) because it was not filed within one year after the effective date of AEDPA (April 24, 1996). *See* May 30, 2001 R. & R. at 4 (citing *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998); *Miller v.*

*N.J. State Dep't of Corr.*, 145 F.3d 616, 617 (3d Cir. 1998)).[18] Instead, it was filed "more than three (3) years and four (4) months after the limitation period had expired." *Id.* at 4–5. In addition, Judge Scuderi pointed out that Murray did not even attempt to assert that he qualified for a different start date under sections 2244(d)(1)(B)–(D). *See id.* at 5.

Judge Scuderi then examined whether Murray's petition could be saved via statutory or equitable tolling. *See id.* at 5–7. Regarding statutory tolling, Judge Scuderi explained that Murray's January 1997 PCRA petition would not toll the time for him to file his habeas petition under § 2244(d)(2) because the PCRA court dismissed the petition as untimely and, therefore, it was not a "'properly filed application' for state post-conviction relief."[19] *Id.* at 5 n.5. As for equitable tolling, Judge Scuderi determined that Murray was not entitled to equitable tolling because he "present[ed] us with no evidence that he either diligently pursued his claims or was prevented in some extraordinary way from doing so." *Id.* at 7.

With these being the grounds upon which Judge DuBois denied Murray's habeas petition, there is no method by which the court could contort *Peterson* or *Bradley* in a way so they could be material to this decision. The court will start with *Peterson*. In *Peterson*, the Pennsylvania Supreme Court concluded that (1) the untimely filing of a first PCRA petition constituted ineffective assistance of counsel *per se*, (2) this ineffectiveness could constitute a newly discovered fact for the section 9545(b)(1)(ii) exception to the one-year limitations period, **and** (3) the defendant in that case timely invoked this exception by filing a PCRA petition within a couple of months after first learning of his counsel's ineffectiveness in filing a late PCRA petition. *See* 192 A.3d at 1132.

---

[18] In *Burns*, the Third Circuit held that "habeas petitions filed on or before April 23, 1997[, which was one year after AEDPA became effective,] may not be dismissed for failure to comply with § 2244(d)(1)'s time limit." 134 F.3d at 111.

[19] Section 2244(d)(2) states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Given these holdings in *Peterson*, this court has struggled to understand Murray's convoluted argument as to why *Peterson* has any applicability to the denial of his habeas petition on timeliness grounds. *See* Pet'r's Br. at ECF pp. 11–13. As it appears that Murray's *Peterson* argument focuses on his second PCRA petition filed in January 1997, he may be contending that under *Peterson*, the PCRA court should not have determined that his second PCRA petition was untimely under the section 9545(b)(1)(ii) exception. Consequently, if that second PCRA petition was timely, then statutory tolling under section 2244(d)(2) would have applied while it remained pending in the state court and, thus, his habeas petition would have been timely.

If this is Murray's argument, he has still failed to show that *Peterson* is material to the decision to not apply statutory tolling to his habeas petition because *Peterson* would not have rendered his second PCRA petition timely. In this regard, Murray appears to have not understood what the Superior Court was explaining to him in affirming the dismissal of his fourth PCRA petition; namely, while *Peterson* may have held that counsel is ineffective for failing to file a timely PCRA petition or that this ineffectiveness could constitute a "fact" to invoke the section 9545(b)(1)(ii) exception, the aspect of the case that permitted the defendant to invoke the exception is that he timely filed a PCRA petition raising the exception. *See* 192 A.3d at 1232; *Murray III* at *4 ("[Murray] misapprehends the import of *Peterson*. The fact that underpinned the timeliness exception in that case was that Mr. Peterson had been completely deprived of collateral review due to his counsel's error. Mr. Peterson's subsequent PCRA petition was **filed within the requisite time following his discovery of that fact**, made with the exercise of due diligence."). The facts of Murray's case are dissimilar to Mr. Peterson's because Murray knew about his counsel failing to file an allegedly requested appeal and the untimeliness of counsel's PCHA petition for years prior to filing his second PCRA petition. As just one example of proof of Murray's knowledge, he

has attached a motion for leave to appeal *nunc pro tunc* that he filed in 1992 in the Court of Common Pleas, and in this motion, Murray states his knowledge about counsel's failure to file an appeal and the denial of his PCHA petition. *See* Pet'r's Br., Ex. Q at ECF pp. 199–202, Doc. No. 35-1; *see also id.* at ECF p. 2 (describing exhibit Q as "Motion for LEAVE TO APPEAL [sic] nunc pro tunc; and dismissal Order, and subsequent appeal, filed in 1992"). Due to Murray having knowledge of the "fact" of his counsel's alleged ineffectiveness at least four years prior to filing his second PCRA petition, he could never have invoked the section 9545(b)(1)(ii) exception because, at a minimum, he did not file the petition within the requisite period for filing it after the claim could have been presented.[20] Therefore, *Peterson* is immaterial to the basis of the dismissal of his habeas petition on timeliness grounds.

As for *Bradley*, unlike with *Peterson*, the court cannot conceive of any argument from which the court could determine that it is material to the basis on which Judge DuBois initially denied habeas relief. In *Bradley*, the Pennsylvania Supreme Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." 261 A.3d at 401. While *Bradley* was undeniably significant insofar as it altered the procedure for raising ineffective assistance of counsel claims that had been in effect for almost 20 years after *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002),[21] it does not affect Judge DuBois's determination that the initial habeas petition was facially untimely or that he was not entitled to

---

[20] PCRA section 9545(b)(2) provides the period in which a PCRA petitioner must file a PCRA if invoking one of the three timeliness exceptions in section 9545(b)(1). The prior version of section 9545(b)(2) required petitioners to file a petition invoking one of the three exceptions in paragraph (1) within 60 days of the date the claim could have been presented. Effective December 24, 2018, section 9545(b)(2) was amended "to enlarge the deadline from [60] days to one year." *Commonwealth v. Freemore*, No. 2465 EDA 2021, 2023 WL 2252396, at *2 n.1 (Pa. Super. Feb. 28, 2023). For purposes of Murray's second PCRA petition, the older version providing for the petition to be filed in 60 days would have been applicable.

[21] In *Grant*, the Pennsylvania Supreme Court held that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." 813 A.2d at 738. *Bradley* abrogated *Grant*.

statutory or equitable tolling. Therefore, Murray has failed to show extraordinary circumstances justifying relief under Rule 60(b)(6) through *Bradley* as well.

Even if *Bradley* could serve as an extraordinary circumstance warranting Rule 60(b)(6) relief, the court would still deny Murray's *Bradley* claim because he never exhausted this claim in the state courts. As with claims for habeas relief under 28 U.S.C. § 2254, any new claims brought in a motion under Rule 60(b), where a habeas petitioner is seeking relief from a final order denying habeas relief, must be fully exhausted prior to the filing of the Rule 60(b) motion. *See Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990) (explaining that exhaustion requirement applicable to section 2254 habeas petitions "is applicable to new claims a habeas petitioner may raise in seeking relief from a final order under Fed.R.Civ.P. 60(b)" (citing *Pitchess v. Davis*, 421 U.S. 482, 489–90 (1975))). Here, although Murray raised claims relating to *Peterson* in his fourth PCRA petition, he did not raise any argument concerning *Bradley*, nor could he as the Pennsylvania Supreme Court did not decide *Bradley* until October 20, 2021, which was months after the PCRA court dismissed the fourth PCRA petition in March 2021. Since Murray failed to exhaust his *Bradley* claim, the court cannot consider it as part of the instant motion.

As for Murray's remaining claims—his claim that the cumulative acts of ineffective assistance of counsel constitute extraordinary circumstances warranting relief and his claim that the Commonwealth misled him into believing that PCRA relief was available to him in 1997—the court must deny these claims because Murray has failed to timely raise them. As stated above, a party must move for relief under Rule 60(b)(6) "within a reasonable time." *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."). Murray's arguments relating to the cumulative ineffectiveness of his prior counsel

22

or being purportedly misled by the Commonwealth about his PCRA rights relate to facts that Murray was aware of decades prior to filing the instant motion. There is ample evidence that Murray has been complaining about numerous instances of alleged ineffective assistance of counsel since 1997, and to the extent that he was purportedly misled by the Commonwealth into thinking he could obtain PCRA relief in 1997, he surely was aware of the Commonwealth's purported misrepresentations by the time that the PCRA court dismissed his second PCRA petition that same year, and definitely no later than September 1999 when the Pennsylvania Supreme Court appears to have denied his petition for allowance of appeal. Therefore, the court will also deny these claims because they are untimely.

### III.    CONCLUSION

As explained above, Murray has not shown that he is entitled to relief under Rule 60(b)(6) based on a change in decisional law due to *Peterson* or *Bradley*. In addition, his other claims in the motion are untimely. As such, the court will deny Murray's Rule 60(b) motion. The court also finds that there is no cause to issue a certificate of appealability.[22]

---

[22] Since the court is denying Murray's Rule 60(b)(6) motion, the court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court...."); *Bracey*, 986 F.3d at 282 ("[A certificate of appealability] is required when a petitioner appeals the denial of a Rule 60(b) motion seeking reconsideration of a dismissal of a habeas petition, even if that dismissal was on procedural grounds."). This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to whether to issue a certificate of appealability,

> and the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the court finds that reasonable jurists would not find it debatable whether Murray's Rule 60(b)(6) motion states a valid claim of the denial of a constitutional right or whether the court was correct in determining that

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

neither *Peterson* nor *Bradley* were material to the denial of Murray's original habeas petition or, even if they were, that Murray has failed to meet the "high threshold for 60(b) relief." *Bracey*, 986 F.3d at 295. In addition, jurists of reason would not debate whether Murray failed to timely raise the other claims in his motion. As such, the court declines to issue a certificate of appealability.